IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff* | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : <br> : | |
| WILLIAM REDDINGTON, JR., *et al.*,<br>*Defendants* | : <br> : | No. 19-3133 |

## MEMORANDUM

PRATTER, J.                                                                                                   NOVEMBER 2, 2021

      This is a tax collection case. The United States of America seeks a judgment based on assessments for federal employment taxes against Defendant William Reddington, Jr. doing business as president of Mercury Transportation, Inc. The United States also seeks foreclosure of federal tax liens arising from tax assessments against Mr. Reddington and a judicial decree of the sale of Mr. Reddington's property to pay his tax liabilities.

      The United States filed a Motion for Summary Judgment, arguing that Mr. Reddington has not rebutted the Government's *prima facie* case of tax liability established by certified copies of tax assessments. Mr. Reddington argues that the United States has not proven all the facts necessary to foreclose the liens and order the sale of his property.

      For the following reasons, the Court grants the United States' Motion for Summary Judgment, its request that the federal tax lien be enforced against Mr. Reddington's property through foreclosure of the liens, and a judicial decree of sale, subject to a stay discussed herein.

### BACKGROUND

      Unless specifically indicated herein, the following material facts are undisputed.

      A delegate of the Secretary of the Treasury of the United States made assessments against Mr. Reddington, doing business as Mercury Transport, Inc., on December 29, 2008 for

employment taxes owed for the tax periods ending December 31, 2005, March 31, 2007, June 30, 2007, September 30, 2007, and December 31, 2007. Doc. 15-5 These assessments are shown on the Certificates of Assessments, Payments, and Other Specified Matters, Form 4340, attached to the declaration of Internal Revenue (IRS) officer Christina L. Brandon. Doc. No. 15-6. Despite notices and demands for payments of the assessments, Mr. Reddington failed to pay the amounts due. Doc. No. 15-1 ¶ 12; Doc. No. 15-3 ¶ 12; Doc. No. 15-5. Mr. Reddington owed $396,125.78, as of July 22, 2019, plus interest accruing from that date. Doc. No. 15-3 ¶ 13; Doc. No. 15-5.

The United States filed notices of federal tax liens against Mr. Reddington with the Montgomery County Prothonotary in Norristown, Pennsylvania on April 16, 2009 and refiled those liens on March 27, 2018. Doc. No. 15-3 ¶¶ 15–16; Doc. No. 15-8. Mr. Reddington owns property at 408 Aqueduct Drive, North Wales Pennsylvania ("Aqueduct Drive Property"). Doc. No. 15-3 ¶ 14; Doc. No. 15-7. The tax liens at issue attached to this property, where Mr. Reddington lives. As required by 26 U.S.C. § 7403(b), the United States named as defendant Bank United Texas FSB, to permit it to claim any lienholder interest in the property. Default judgment was granted with respect to Bank United Texas on November 2, 2021. Doc. No. 24. Therefore, Bank United Texas has no claim to proceeds from a sale of the property.

The United States now seeks to reduce Mr. Reddington's penalties to judgment. Doc. No. 15-1, at 5–10. In addition, the United States seeks to enforce the tax liens against Mr. Reddington's property through foreclosure and a judicial decree of sale. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

On a motion for summary judgment, the Court views the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant is initially responsible for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court[]that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

DISCUSSION

The United States asks the Court to: (1) reduce the tax assessments against Mr. Reddington to a judgment on the record, (2) provide a judicial determination that the United States has valid and subsisting tax liens on Mr. Reddington's Aqueduct Drive Property, and (3) order the foreclosure of the federal tax liens and a judicial decree of the sale of the property located at 408 Aqueduct Drive, North Wales, Pennsylvania. The Court addresses each in turn.

## I. The United States is Entitled to Summary Judgment on its Claim to Reduce Mr. Reddington's Penalties to Judgment

The Court first turns to the United States' motion for summary judgment to reduce its tax penalties against Mr. Reddington to judgment under 26 U.S.C. § 6672. The United States Internal Revenue code requires employers to withhold both federal Social Security and individual income taxes from its employees' wages. 26 U.S.C. §§ 3102(a), 3402(a). The employer is required to pay these taxes to the United States on a quarterly basis, and in the interim is required to hold the funds in trust for the Government, leading to the moniker "trust fund taxes." 26 U.S.C. § 7501(a); *Slodov v. United States*, 436 U.S. 238, 243 (1978). If an employer fails to make these required quarterly payments or fails to pay all of the required quarterly tax, the IRS may assess penalties against the responsible persons within the business in the amount of the late or missing taxes. 26 U.S.C. § 6672; *United States v. Pepperman*, 976 F.2d 123, 127 (3d Cir. 1992). Moreover, the IRS is not required to attempt to collect these "trust fund taxes" from the business entity before seeking to collect from the person responsible. *Pepperman*, 976 F.2d at 127.

Section 6672(a) states the ways that the United States may hold an employer or a "responsible person" liable for failing to remit these "trust fund taxes." Section 6672(a) states, in relevant part:

4

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

To parse this language, the statute requires (1) that there be a responsible person and (2) that this responsible person acted "willfully" in either failing to collect the taxes, truthfully account for the taxes, or acting to evade or defeat the taxes or tax payment. *Quattrone Accts., Inc. v. IRS*, 895 F.2d 921, 927 (3d Cir. 1990).

At the summary judgment stage, the Court's job is to determine whether the nonmoving party, here Mr. Reddington, has asserted any genuine dispute of material fact such that the Court may not grant the moving party judgment as a matter of law. In cases such as this one, a certified record of the Government's tax assessment constitutes presumptive proof of the assessment, establishes the Government's *prima facie* case, and shifts the burden of proof to the defendant. *United States v. Fior D'Italia, Inc.* 536 U.S. 238, 242–43 (2002); *Brounstein v. United States*, 979 F.2d 952, 954 (3d Cir. 1992). In other words, an assessment under 26 U.S.C. § 6672 against a responsible person is equivalent to the assessment of a tax, and once the IRS assesses a tax, there is a rebuttable presumption that the IRS' assessment is correct. *Brounstein*, 979 F.2d at 954. Thus, once the United States introduces proof of an assessment, the burden shifts to the taxpayer to disprove that assessment. *Id.* In sum, the introduction of the certified record places both the burden of production and the burden of persuasion upon the taxpayer. *Psaty v. United States,* 442 F.2d 1154, 1160 (3d Cir. 1971).

Here, the United States submitted Certificates of Assessment, Form 4340, for all the tax periods at issue in this case. Form 4340 is a certified record of the Government's tax assessment, thus constituting presumptive proof of the assessment, establishing the Government's *prima facie*

5

case, and shifting the burdens of proof and production to Mr. Reddington. *United States v. Zarra*, 477 F. App'x 859, 860 (3d Cir. 2012); *Psaty*, 442 F.2d at 1159.

What that means here is that the IRS has presumptively proven its case against Mr. Reddington and summary judgment is appropriate unless Mr. Reddington asserts a genuine dispute of material fact that would disprove either that he is a "responsible person" or that he acted "willfully." The Court analyzes these two required elements in turn.

### A. Mr. Reddington Was a Responsible Person Within the Meaning of 26 U.S.C. § 6672(a)

Under § 6672(a), the Government may hold an individual person liable for the unpaid or late taxes of a business if that person is a "responsible person." A person is considered "responsible" for purposes of § 6672(a) even if there are others within the same business who may also be considered "responsible"; in other words, § 6672(a) creates joint and several liability. *Quattrone*, 895 F.2d at 926–27.

The touchstone inquiry for determining if a person is "responsible" within the meaning of § 6672 is whether he or she has significant control over the company's finances. *United States v. Carrigan*, 31 F.3d 130, 133 (3d Cir. 1994). A person has significant control over the company's finances if that person has "the final or significant word over which bills or creditors get paid." *Quattrone*, 895 F.2d at 927. In addition, courts consider a list of other non-dispositive factors in determining if a person is "responsible" within the meaning of § 6672. *Carrigan*, 31 F.3d at 133. These factors include: "(1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the taxpayer's signature on the employer's federal employment or other tax returns; (4) the identity of the officers, directors and shareholders of the corporation; (5) the identity of the individuals who hired and fired employees;

6

and (6) the identity of the individual(s) who were in charge of the financial affairs of the corporation." *Id.*

Applying those principles to this case, there is no genuine dispute of material fact that Mr. Reddington was a "responsible person" within the meaning of § 6672(a). In his responses to the Government's requests for admissions, Mr. Reddington admitted that he was the president of Mercury Transport, Inc. during the relevant tax periods, that he oversaw business operations, that he was responsible for directing or authorizing payments to creditors, that he was responsible for signing loans and checks, that he was responsible for making federal tax deposits, overseeing federal tax returns, and that he was aware Mercury Transport had to withold, collect, and pay federal employment taxes for the taxable periods that the company conducted business. Doc. No. 15-4, at 9, Resp. ¶¶ 1–6. Mr. Reddington does not contest these facts nor point to any genuine dispute of material fact on this issue. *See* Doc. No. 21. Therefore, the Court finds that the Government has met its burden of proving there is no genuine dispute of material fact that Mr. Reddington was a "responsible person" within the meaning of § 6672(a).

B. <u>Mr. Reddington Acted "Willfully" Within the Meaning of 26 U.S.C. § 6672(a)</u>

Under § 6672(a), the Government may hold an individual person liable for the unpaid or late taxes of a business if the "responsible person" acted "willfully" in either failing to collect the taxes, to truthfully account for the taxes, or acting to evade or defeat the taxes or tax payment. *Quattrone*, 895 F.2d at 927. Under § 6672(a), a responsible person acted "willfully" if they engaged in "a voluntary, conscious and intentional decision to prefer other creditors over the Government. A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid." *Greenberg v. United States*, 46 F.3d 239, 244 (3d Cir. 1994) (internal quotation marks and citations

7

omitted). The responsible person does not need to "act with an evil motive or bad purpose for his action or inaction to be willful." *Id.* Instead, "willfulness" for purposes of § 6672(a) exists any time the responsible person directs "[a]ny payment to other creditors, including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the Government." *Id.*

There is no genuine dispute of material fact that Mr. Reddington acted "willfully" within the meaning of § 6672(a). Mr. Reddington first concedes that "[t]he facts as recited in [the United States'] Motion are substantially correct with a few differences." Doc. No. 21, at 1. However, Mr. Reddington then appears to contest the facts that support finding he acted "willfully" under § 6672(a). Mr. Reddington claims that he "truthfully accounted for all of the liable taxes by timely filing all of the required tax returns . . . in good faith," that he "attempt[ed] to try and agree on a mutually satisfactory payment arrangement," and that "the parties did agree on an Installment Payment Agreement to pay these tax delinquencies which the Defendant honored until the filing of this suit." *Id.* at 1–2. These facts, Mr. Reddington asserts, "evidence his lack of willfulness as is required" under § 6672(a). *Id.* at 2. However, Mr. Reddington's argument here fails for two separate reasons, one factual and one legal.

First, as a factual matter, Mr. Reddington's assertions are irrelevant to the "willfulness" of his actions under § 6672(a). As explained above, a person acts "willfully" if they voluntarily prefer other creditors or payments to employees over taxes due to the United States. *Greenberg*, 46 F.3d at 244. Even construing the facts in the light most favorable to Mr. Reddington as the non-moving party, as the Court is required to do, Mr. Reddington expressly admitted that he did as much. In his responses to the Government's request for admissions, Mr. Reddington admitted that he authorized or directed Mercury Transport to make payments to keep the business operating instead

of paying the company's quarterly federal employment taxes. Doc. No. 15-4, at 9, Resp. ¶ 6. In addition, he admitted that he did not take any action to see that federal employment taxes were paid on time, and instead noted "when enough money came in taxes were paid." *Id.*, at 10, Resp. ¶ 9. That Mr. Reddington "truthfully accounted for all of the liable taxes by timely filing all of the required tax returns" or subsequently contacted the IRS to attempt to come up with a payment plan is irrelevant. Doc. No. 21, at 1–2. The material fact that Mr. Reddington opted to pay other creditors to keep the business operating and only paid taxes "when enough money came in" remains undisputed and is sufficient to establish that he acted "willfully" for purposes of § 6672(a). Further, as an aside, that Mr. Reddington may or may not have engaged the IRS in an attempt to develop a payment plan *after* violating federal tax law has no bearing on whether he acted "willfully" *at the time* he failed to pay the requisite taxes, which is the only relevant time under § 6672(a). As a result, Mr. Reddington failed to demonstrate a genuine dispute of material fact sufficient to defeat the Government's Motion.

Second, as a matter of law, the nonmoving party at the summary judgment stage is required to point to specific parts of the record to demonstrate either a genuine dispute of material fact or to disprove the moving party's assertion that there is *not* a genuine dispute of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322. Indeed, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Here, Mr. Reddington has not met that burden. Instead, Mr. Reddington's assertions are entirely unsupported by the record. The fact that Mr. Reddington claims that he did not act "willfully" for purposes of § 6672(a) is unavailing at this stage. *Springs v. Prime Care Med., Inc., et al.*, No. 15-cv-2684, 2016 WL 1660597, at *5 (E.D. Pa. Apr. 27, 2016) (a party's "bald assertions, without any supporting facts, cannot overcome a motion for summary judgment")

(citing *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993)). As a result, Mr. Reddington has failed to meet his burden to demonstrate either a genuine dispute of material fact or to disprove the moving party's assertion that there is not a genuine dispute. Bald assertions, unsupported by anything in the record, simply won't do.

Because Mr. Reddington was a "responsible person" within the meaning of § 6672(a), acted "willfully" under § 6672(a) in failing to collect and pay the trust fund taxes for Mercury Transport, Inc., and because Mr. Reddington has failed to raise any genuine dispute of material fact in regards to either issue, the United States is entitled to reduce its assessments to judgment. Accordingly, the Court enters judgment in favor of the United States and against Mr. Reddington, doing business as Mercury Transport, Inc., in the amount of $396,125.78 plus interest accrued after July 22, 2019.

## II. The United States Established Valid Liens on the Aqueduct Drive Property

The United States next asks the Court to both provide a judicial determination that the United States has valid and subsisting tax liens on Mr. Reddington's Aqueduct Drive. The Court agrees that the United States is entitled to summary judgment on this issue.

If a person liable to pay any tax refuses or neglects to pay after demand, a tax lien in favor of the United States attaches to all property and rights to property belonging to the person. 26 U.S.C. § 6321. The tax liens arise at the time the assessment is made. 26 U.S.C. § 6322. The United States does not need to record the tax lien for it to become effective. *Phelps v. United States*, 421 U.S. 330, 334–35 (1975).

Mr. Reddington does not contest the validity of the tax liens. The tax liens at issue here arose on the date of the assessment, December 29, 2008. The liens attached to all property and rights to property belonging to Mr. Reddington. Although it is not legally required, the United

States recorded its liens against Mr. Reddington's Aqueduct Drive Property in 2009 and again in 2018. Therefore, the Court determines that the United States has valid and subsisting federal tax liens on all property and rights to property of Mr. Reddington, including the Aqueduct Drive Property.

### III. Foreclosure of the Tax Liens and a Judicial Decree of Sale of Mr. Reddington's Aqueduct Drive Property Are Warranted in This Case

Finally, the United States requests that the Court order the foreclosure of the federal tax liens and a judicial decree of sale of the Aqueduct Drive Property. Under 26 U.S.C. § 7403, the United States may bring a civil action to enforce federal tax liens and "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a). The same section of the Internal Revenue Code provides that a Court "may decree a sale of such property."26 U.S.C. § 7403(c).

Under § 7403 the United States has the power to enforce tax liens through a forced sale of property. 26 U.S.C. §§ 7403(a), 7403(c). The only issue at this stage is whether and to what degree the Court should exercise its limited discretion in ordering the foreclosure of the United State' tax liens and a judicial decree of sale of Mr. Reddington's Aqueduct Drive Property.

Mr. Reddington offers two ways that the Court might exercise its equitable discretion in this case. First, Mr. Reddington expressed his desire that the Court permit him to again enter an agreement with the IRS to repay the delinquent taxes, rather than ordering the sale of the Aqueduct Drive Property, in order to prevent him from becoming homeless. Doc. No. 21, at 2. Second, Mr. Reddington requests that the Court consider the effects of the COVID-19 pandemic and its effect on his ability to find replacement housing. *Id.* Mr. Reddington also argues that the Court should not enter a judgment in the United States' favor and order the sale of the Aqueduct Drive Property

because it will negatively impact his credit report. *Id.* The United States argues that the Court does not have the level of discretion that Mr. Reddington suggests. Doc. No. 22, at 6–7. However, the United States does agree that a temporary postponement of any sale would "be warranted in this case." *Id.* at 7. The Court agrees with the United States that it does not have the degree of equitable discretion that Mr. Reddington asserts. Moreover, the Court agrees to delay the forced sale as requested by Mr. Reddington and as approved by the United States.

In an action for judicial enforcement of tax liens under 26 U.S.C. § 7403, the presiding court has a limited amount of equitable discretion. *See United States v. Rodgers*, 461 U.S. 677, 705–09 (1983) (noting that the language "may decree a sale of such property" in § 7403 leaves room "for the exercise of reasoned discretion"). However, this discretion has been interpreted quite narrowly, especially in the context of property that is not subject to any sort of joint ownership arrangement. The Supreme Court in *Rodgers* clarified that there are "virtually no circumstances, for example, in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself." *Id.* at 709.[1] Nevertheless, the *Rodgers* Court did identify at least two ways in which a court may exercise its equitable discretion in cases with a single property owner: postponing a sale temporarily and/or establishing an "upset" price on the sale. *Id.* at 709 n.39.

Applying those principles to the instant case, the Court does not have the discretion to refuse to authorize the sale of the Aqueduct Drive Property "simply to protect" Mr. Reddington's interests. *Id.* at 709; *see also United States v. Stewart*, No. 10-CV-400, 2012 WL 71709, at *4 (W.D. Pa. Jan. 9, 2012) (declining to exercise any equitable discretion under *Rodgers* when the

---

[1] The *Rodgers* Court went on to identify a limited set of circumstances in which a court may exercise its discretion when third parties will be impacted by the sale of the property at issue. *Id.* at 710. Mr. Reddington is the sole owner of the Aqueduct Drive Property and no third party would be impacted by its sale. Therefore, the Court will not address these considerations.

property was owned solely by the delinquent taxpayer). The Court does, however, have the power to temporarily postpone the sale of Mr. Reddington's property. *Rodgers*, 461 U.S. at 709 n.39. Moreover, the United States' accedes to Mr. Reddington's request for a temporary reprieve in this case.[2] Therefore, the Court will order the foreclosure of the tax liens, the sale of the property located at 408 Aqueduct Drive, North Wales Pennsylvania, and the distribution of the proceeds of the sale, up to the amount of total tax liability, to the United States.[3]

### A. Mr. Reddington's Arguments Misunderstand the Nature of the Present Proceeding

Mr. Reddington argues that the United States has not thoroughly considered alternative collection methods, as required under 26 U.S.C. § 6331, before the foreclosure and sale of his property. In addition, Mr. Reddington argues that the United States' failure to consider other alternatives constitutes an abuse of the United States' discretion under 26 U.S.C. § 6330(c)(2)(A)(iii). However, Mr. Reddington has misapprehended the nature of the United States' motion in this case. As a result, his claims do not address the United States' motion to enforce the tax liens through foreclosure and a judicial decree of sale of the Aqueduct Drive Property. The Court briefly addresses Mr. Reddington's contentions to explain why they are unavailing in this case.

#### i. *Mr. Reddington Misinterprets the Nature of the United States' Action*

Mr. Reddington correctly asserts that the United States has the power to levy upon his property. Doc. No. 21, at 3. Mr. Reddington argues, however, that in order to levy upon his property, the United States is required to provide the taxpayer with a notice of its intent to do so

---

[2] In its reply brief, the United States "acknowledge[d] that a temporary postponement of any sale would be warranted in this case." Doc. No. 22, at 7.

[3] However, as set forth in the accompanying order, the Court stays the scheduling of a judicial sale of the Aqueduct Drive Property pending a good faith court-supervised conference between the parties to discuss appropriate procedures.

and to accompany that notice with a notice of the various administrative appeals available to a taxpayer. *Id.* But Mr. Reddington misunderstands the nature of the United States' present action.

An administrative levy on a taxpayer's property is something altogether different from an enforcement proceeding under § 7403. As the Supreme Court explained in *Rodgers*, an administrative levy and a lien enforcement proceeding are two separate and distinct tools available to the United States to enforce the tax laws. "The administrative levy has been aptly described as a provisional remedy. In contrast to the lien-foreclosure suit, the levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the Government against diversion or loss while such claims are being resolved." *United States v. National Bank of Commerce*, 472 U.S. 713, 721 (1985) (internal quotation marks omitted). Because a levy under § 6331 is distinct from a lien and an enforcement proceeding on that lien under § 7403, the exemptions and limitations on the levy power are inapplicable to § 7403 enforcement proceedings. *See Rodgers*, 461 U.S. at 682–683. Therefore, Mr. Reddington's arguments on this issue do not in any way impact the United States' Motion.

    ii. *Mr. Reddington Misinterprets the Power of the Court to Review the IRS' Discretion Regarding Offers to Compromise*

Mr. Reddington makes two separate arguments about the IRS' discretion to refuse to compromise. Mr. Reddington first appears to argue that IRS Officer Dalton deprived him of the ability to compromise with the IRS. Doc. No. 21, at 4. Mr. Reddington next argues that the IRS' discretion is subject to an abuse of discretion standard. Doc. No. 21, at 5. But again, Mr. Reddington misapprehends the nature of the present proceeding.

Under 26 U.S.C. § 7122, Secretary of the Treasury is authorized to compromise "any civil or criminal case arising under the internal revenue laws prior to reference to the Department of

Justice for prosecution or defense." 26 U.S.C. § 7122(a). However, once the case has been referred to the Department of Justice, only the Attorney General or his delegate is authorized to compromise. *Id.*

Mr. Reddington's argument falters at this first step because he fails to acknowledge the procedural posture of the case. His argument that IRS Officer Dalton abused her discretion is unavailing under § 7122 because, once the case was referred to the Department of Justice, not even the Secretary of the Treasury, let alone Officer Dalton, was authorized to compromise with Mr. Reddington. In other words, the IRS' actions to compromise or refuse to compromise after referral to the Department of Justice are irrelevant.

Mr. Reddington's argument also fails to appreciate the nature of the present proceeding. If the Secretary of the Treasury does compromise with a taxpayer, that taxpayer may appeal "any rejection of such offer or agreement to the Internal Revenue Service Independent Office of Appeals." 26 U.S.C. § 7122(e). But this Court is not that office. "There is no provision for judicial review in district court under § 7122." *Asemani v. I.R.S.*, 163 F. App'x 102, 105 (3d Cir. 2006). As a result, this Court lacks jurisdiction to review any offer to compromise by the IRS and is powerless to assess Mr. Reddington's arguments on this issue. *Id.* Therefore, Mr. Reddington's arguments on this issue also do not in any way impact the United States' Motion.

## Conclusion

For the foregoing reasons, the Court will grant the Government's Motion for Summary Judgment to reduce Mr. Reddington's penalties to judgment, to provide a judicial determination that the United States has valid tax liens, and to order the foreclosure of those tax liens and a judicial decree of sale of Mr. Reddington's property at 408 Aqueduct Drive, North Wales,

Pennsylvania to satisfy Mr. Reddington's tax penalties pending a conference with the parties. An appropriate order follows.

BY THE COURT:

*[signature]*

**GENE E.K. PRATTER**

**UNITED STATES DISTRICT JUDGE**
